■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHARLES W. BUYCE, Appellant.—Mahoney, P. J. Appeal from a judgment of the County Court of Schenectady County (Harrigan, J.), rendered November 6, 1987, convicting defendant upon his plea of guilty of the crime of burglary in the second degree.

On the morning of March 16, 1987, Ruth Barber, who resided in the Town of Rotterdam, Schenectady County, was speaking on the telephone when she saw a man walking up the driveway at the house of a neighbor, Barbara Montayne.

She observed that the person was a white male of slender build with dark hair and a full beard, and wearing a tan jacket. Knowing that the Montayne residence was empty throughout the day, Barber described her observations to the neighbor to whom she was talking. The neighbor sent her 29-year-old son, Wyatt Gething, to investigate.

Upon reaching Montayne's house, Gething noticed that the front door was ajar and the glass was broken. While walking up the driveway, he observed a man running toward him and thus was able to observe part of the intruder's front before he turned and ran in another direction. Gething's description of the individual was essentially the same as that made by Barber. Gething returned home and gave a telephonic description of the individual to Rotterdam Police Investigator Anthony Jasenski. Lieutenant Timothy Bradt, after receiving a description of the suspect from Jasenski on his police scanner, drove to the area of the incident. Upon reaching the scene, Bradt observed a man matching the description of the suspect enter a taxicab. He blocked the path of the cab and requested the man to exit the cab. Jasenski later accompanied Barber and Gething to that location, where Gething immediately identified the man as the individual he had seen exiting the Montayne residence. Barber also made a positive identification. After the identification, the suspect was arrested and searched and certain items were found on his person which Montayne subsequently identified as her possessions.

Defendant was indicted for one count each of burglary in the second degree, criminal mischief in the fourth degree and petit larceny. After a suppression hearing, County Court granted defendant's motion to suppress Barber's proposed in-court identification of defendant but denied defendant's motion to suppress any identification testimony of Gething. Defendant subsequently pleaded guilty to burglary in the second degree in full satisfaction of the indictment and was sentenced as a second violent felony offender to an indeterminate term of 4 to 8 years' imprisonment. This appeal by defendant ensued.

Defendant's contention that his constitutional right against illegal search and seizure was violated when the police detained and frisked him is without merit. The quality and content of the information communicated to the police officers provided specific and articulable facts justifying the stop (see, *People v Cantor*, 36 NY2d 106, 113). Further, since defendant's physical appearance matched the description of the perpetrator supplied by a witness and defendant was observed in close

proximity to the scene of the crime, it is clear that the police had reasonable suspicion to detain defendant *(see, People v Cortijo,* 141 AD2d 830). Thus, we hold that Bradt's original stop of defendant was a legal detention based upon the reasonable suspicion that a crime had occurred *(see,* CPL 140.50 [1]; *People v Rueffer,* 130 AD2d 877, 878, *lv denied* 70 NY2d 717; *see also, People v Hicks,* 68 NY2d 234, 238).

Although the record fails to demonstrate that Bradt was motivated by any clear and articulable facts that the suspect was armed or presented a danger of physical injury to him, the frisk was nonetheless proper given that the circumstances provided reasonable suspicion that the crime of burglary had occurred *(see, People v Mack,* 26 NY2d 311, *cert denied* 400 US 960; *cf., People v Rueffer, supra).* In any event, no evidence was seized as a result of the frisk. It follows, therefore, that since the initial stop and frisk were lawful, the evidence seized as a result of the search subsequent to the arrest was properly ruled admissible by County Court.

Turning to the proposed in-court identification testimony of Gething, we hold that County Court properly denied suppression. Gething, who was 20 to 30 feet from the suspect at the time he saw him running from the Montayne house, was able to describe the suspect's stature, attire and general characteristics. Gething thus had a sufficient independent basis for making an in-court identification regardless of the showup procedure employed *(see, People v Charlier,* 136 AD2d 862, 863-864). Although it is clear that collective viewing of a suspect by witnesses, as here, is less than ideal *(see, People v Adams,* 53 NY2d 241, 249; *see also, People v Love,* 57 NY2d 1023), any prejudice to defendant was dissipated by County Court's ruling to suppress the proposed in-court identification testimony of Barber and Gething's independent basis for identification.

Finally, defendant's claim that reversal is warranted due to misstatements in County Court's findings of fact on the suppression motion is without merit and requires no discussion.

Judgment affirmed. Mahoney, ·P. J., Kane, Weiss, Levine and Harvey, JJ., concur.